## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES A. WILLIS,

      Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

      Defendants.

Civil Action No. 04-2053 (CKK)

## MEMORANDUM OPINION
(October 10, 2008)

This is an action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, and the Privacy Act of 1974, 5 U.S.C. § 552a, in which Plaintiff, proceeding *pro se*, seeks

access to certain records from four agency Defendants, the Federal Bureau of Prisons ("BOP"),

the Drug Enforcement Administration ("DEA"), the Executive Office for United States Attorneys

("EOUSA"), the Federal Bureau of Investigation ("FBI"), and one state entity, the Missouri

Police Department.  Through a series of duplicative FOIA/Privacy Act requests directed to

Defendants, Plaintiff has repeatedly sought all documents related to himself.  Despite Plaintiff's

protestations to the contrary, the Court finds that the four federal agencies have met all of their

obligations under the FOIA and Privacy Act, and that the Missouri Police Department is not a

federal agency subject to the FOIA and Privacy Act.  Accordingly, the Court shall GRANT

Defendants' [27] Motion to Dismiss and for Partial Summary Judgment, for the reasons set forth

below.

# I. BACKGROUND

*A.     Federal Bureau of Prisons* ("BOP")

Plaintiff's Amended Complaint alleges that he sent, on January 15, 2002, FOIA requests

to BOP prisons located at Lompoc, California; Tucson, Arizona; and Phoenix, Arizona.  Am.

Compl. ¶ 9.  The BOP has no record of these FOIA requests and a search conducted in response

to this lawsuit did not reveal any record of such requests.  *See* Defs.' Mot., Ex. 7 ¶¶ 3-4 (Decl. of

R. Hill).  In particular, Ron Hill, the Administrator for the BOP, Freedom of Information

Act/Privacy Act Section in the BOP's Office of General Counsel, confirmed that no record of the

requests are reflected in the "Central Office's database" where such requests are logged as a

matter of course, and that the staff at each of the three BOP locations have no record of such

requests.  *Id.*

*B.     Drug Enforcement Agency* ("DEA")

Plaintiff submitted a FOIA/Privacy Act request to the DEA for all records concerning

himself by letter dated October 27, 1992.  Defs.' Stmt. ¶ 1.  The DEA released approximately 41

pages of documents to Plaintiff and withheld approximately 100 other pages of documents on

December 7, 1992, but Defendant claims not to have received them.  Defs.' Stmt. ¶ 2; Pl.'s Resp.

Stmt. ¶ 2; *Willis v. FBI*, No. 96-1455, Report & Recommendation at 2 (D.D.C. Aug. 6, 1997),

Docket No. [76].  The DEA also advised Plaintiff that his name was mentioned in six additional

"related" files in which he was not the subject, but that could be searched for additional fees.

Defs.' Stmt. ¶ 2.  Plaintiff's counsel submitted payment for the additional searches and by letter

dated December 22, 1993, the DEA released additional documents to Plaintiff.  Defs.' Stmt. ¶ 3.

Plaintiff also alleges that he never received these records.  Pl.'s Resp. Stmt. ¶ 2.

On June 25, 1996, Plaintiff filed an action in this Court alleging that the DEA improperly

withheld records in response to his FOIA request. *See Willis v. FBI*, No. 96-1455, Complaint

(D.D.C. Jun. 25, 1996), Docket No. [1].  On August 6, 1997, Magistrate Judge Alan Kay issued a

Report & Recommendation that recommended that the DEA's Motion for Summary Judgment be

granted. *Id.*, Report & Recommendation at 2 (Aug. 6, 1997), Docket No. [76].  This Court

adopted the Magistrate Judge's Report and Recommendation on February 13, 1998, granted the

DEA's Motion for Summary Judgment, and dismissed Plaintiff's case in its entirety. *Id.*, Docket

No. [106].  On appeal, the D.C. Circuit affirmed. *Willis v. FBI*, 274 F.3d 531, 533 (D.C. Cir.

2001) (holding that the district court acted within its discretion when it denied Plaintiff's request

for counsel).

C.      *Executive Office of United States Attorneys* ("EOUSA")

Plaintiff has submitted numerous FOIA and Privacy Act requests to the EOUSA since

1999.  Plaintiff's first request was sent to the EOUSA on March 15, 1999, requesting all records

related to himself.  Defs.' Stmt. ¶ 19.  Plaintiff then submitted three additional requests directly

to the United States Attorney's Office for the Western District of Missouri ("USA-MOW") for

"access to all records concerning himself and his criminal conviction in the United States District

Court for the Western District of Missouri."[1]  *Id.* ¶ 20.  Although these requests were

consolidated as duplicates and routed to the EOUSA for processing, Plaintiff believes the

requests were not properly consolidated as duplicates (but provides no further elaboration on this

_____

[1] Plaintiff's requests were dated March 15, 1999; March 25, 1999; and April 15, 1999.
Defs.' Stmt. ¶ 20.

3

point).[2]  Pl.'s Resp. Stmt. ¶ 7.  The EOUSA's search located 84 pages of nonpublic records and

650 pages of publicly-filed court records.  Defs.' Stmt. ¶ 21.  The EOUSA processed only the

nonpublic records, and after invoking certain FOIA and Privacy Act exemptions, released the

nonpublic records, in part, to Plaintiff on May 11, 2000.  *Id.*  The EOUSA also advised Plaintiff

that, pursuant to the EOUSA's operating procedures, the 650 pages of publicly-filed court

records could "be obtained from the clerk of the court or [the EOUSA], upon specific request,

subject to a copying fee."  *Id.*  Plaintiff did not request the 650 pages of publicly-filed court

records, and Plaintiff did not administratively appeal the EOUSA's FOIA/Privacy Act response.

*Id.*

Plaintiff's next FOIA/Privacy Act request for all records concerning himself was sent to

the USA-MOW by letter dated October 29, 2001.  *Id.* ¶ 22.  That office sent Plaintiff a letter

indicating that all releaseable information pertaining to him had already been released.  *Id.* ¶ 23.

Plaintiff's request was nevertheless forwarded to the EOUSA for processing.  *Id.*  The EOUSA

sent a letter to Plaintiff dated November 16, 2001, advising that all nonpublic records pertaining

to him had been released, but reminding Plaintiff that 650 pages of publicly-filed Court records

were available but never requested by Plaintiff.  *Id.* ¶ 24.

By letter dated December 7, 2001, Plaintiff requested that the EOUSA send him the 650

---

[2] Plaintiff also believes that the USA-MOW was perpetrating a fraud against him, and
believes he is entitled to access all responsive records because they should have been produced to
him during the proceedings in which he was criminally convicted.  Pl.'s Resp. Stmt. ¶ 7.  These
arguments are repeated in response to numerous facts proffered by Defendants.  The Court shall
address these arguments in the legal discussion below.  *See* Section III, *infra*.

pages of publicly-filed court records described in previous correspondence.[3]  *Id.* ¶ 25.  The

EOUSA then initiated a search for these records but could not locate them.[4]  *Id.* ¶ 26.  In

particular, the USA-MOW, at the request of the EOUSA, performed an automated search of its

Prosecutors Management Information System ("PROMIS") and Legal Information Office

Network System ("LIONS"), reviewed the indices of the Federal Records Center, and sent a

"global email" dated February 22, 2002, to all staff "requesting a district-wide search for the

files."  Defs.' Mot., Ex. 8 ¶ 30 (Decl. of A. Ciccone).  By letter dated July 23, 2002, the EOUSA

informed Plaintiff that it could not locate the records.  The EOUSA also advised Plaintiff that

"any future requests from [P]laintiff for those records would be treated as duplicate requests."

*Id.* ¶ 27.

Plaintiff administratively appealed the EOUSA's failure to locate the 650 pages of

publicly-filed Court records.  *Id.* ¶ 28.  After receiving notice of Plaintiff's administrative appeal,

EOUSA again advised the USA-MOW to conduct another search for the missing records.  *Id.* ¶

33.  The USA-MOW then undertook a second search for the records, as reflected in multiple

memoranda that were drafted that reflected the same.  *See Id.*, Ex. 16 (Memoranda dated

11/5/2002; 11/8/2002; 11/19/2002; and 11/20/2002).  These memoranda describe the extensive

but unsuccessful search for these records.  By letter dated April 7, 2003, the Office of

Information and Privacy ("OIP") affirmed the adequacy of the EOUSA's search for the records

---

[3] Plaintiff also requested copies of his "FBI form 302s."  Defs.' Stmt. ¶ 25.  The EOUSA referred that portion of his request to the FBI for processing.  *Id.*  Plaintiff does not raise any claim concerning this referral.  Pl.'s Resp. Stmt. ¶ 1.  *See generally* Pl.'s Opp'n.

[4] EOUSA did find 20 pages of financial records in debt collection files.  Defs.' Stmt. ¶ 26.  These records were released in full to Plaintiff by letter dated July 23, 2002.  *Id.* ¶ 27.

and "advised [P]laintiff that the missing public court records could be obtained by contacting the clerk of court directly." *Id.* ¶ 34.

By letter dated May 14, 2003, Plaintiff submitted his fifth FOIA/Privacy Act request to the USA-MOW for all documents related to himself. *Id.* ¶ 29. The letter was referred to EOUSA for processing. *Id.* EOUSA determined that this request duplicated his previous four requests. *Id.* Because EOUSA had previously advised Plaintiff that all nonpublic records pertaining to him had been released, *id.* ¶ 24, and that any subsequent requests for the 650 pages of publicly-filed court documents would be treated as duplicative, *id.* ¶ 27, the EOUSA did not respond to the request. *Id.* ¶ 29.

D.    *Federal Bureau of Investigation* ("FBI")

On March 15, 1999, Plaintiff submitted a FOIA/Privacy Act request to the Kansas City Field Office of the FBI ("KCFO") for all records concerning himself. Defs.' Stmt. ¶ 7. By letter dated December 28, 1999, the KCFO informed Plaintiff that its search identified a multi-subject, multi-volume case file and that the portions pertaining to Plaintiff were processed pursuant to his request. *Id.* ¶ 9. By letter dated January 31, 2000, the KCFO informed Plaintiff that 24 pages of records pertained to him. *Id.* ¶ 10. The KCFO released 20 pages in part and withheld four pages in full. *Id.* The KCFO withheld information pursuant to Exemption (j)(2) of the Privacy Act, and Exemptions 2, 7(C), and 7(D) of the FOIA. *Id.* Plaintiff administratively appealed the KCFO's search and withholding determinations on February 17, 2000. *Id.* ¶ 11. On May 2, 2000, the KCFO's search and withholding determinations were affirmed. *Id.*

By letter dated October 29, 2001, Plaintiff submitted a second FOIA/Privacy Act request to the KCFO for records pertaining to himself and records related to case number 90-00010-

01/16-CR-W-6.  *Id.* ¶ 12.  Plaintiff also included a list of seven sub-categories of documents

"maintained by the [USA-MOW] as well as from [the KCFO]" and labeled as follows:

> (a) 1-66B-2367;

> (b) 166B-2567-113;

> (c) 1-245F-199;

> (d) Italian Drug Smuggling Operation;

> (e) any complaint or affidavit in support of the complaint in the indictment of
> [Plaintiff];

> (f) copies of any and all wiretap information which was intercepted by the FBI (or
> any other agency) involved in the investigation of this case wherein [Plaintiff's
> name] was mentioned and recorded;

> (g) copies of any transcripts of intercepted telephone calls made from the Skyway
> Motel in Los Angeles, California from the room which was rented by and
> occupied by [Plaintiff] during the time period from 9/10/88 until 9/12/88 which
> were allegedly made to Kansas City Missouri to the Pumpernickel Deli which was
> owned by James 'Junior' Bradley.

*Id.*  Plaintiff also complained about the KCFO's processing of his first FOIA/Privacy Act request.

*Id.*

By letter dated January 9, 2002, the KCFO advised Plaintiff that its search for responsive

records yielded no records in addition to the ones already processed and released to him as a

result of his first request.  *Id.* ¶ 14.  In response to Plaintiffs' complaints about his first

FOIA/Privacy Act request, the KCFO explained that its decision had been upheld on appeal.  *Id.*

The KCFO also informed Plaintiff that one of his sub-categories of document requests, records in

a file labeled 166B-2367, could not be searched because the file was destroyed on November 23,

1977 (*i.e.*, over 20 years prior to Plaintiff's FOIA request) pursuant to the KCFO's records-

destruction schedules.  *Id.*  The KCFO also explained that file 166B-2567-113 was previously searched in response to Plaintiff's first request, and that file 245-199 pertained to third parties and that Plaintiff's name was not indexed to that file.  The KCFO also explained that no records were located in the KCFO concerning "Italian Drug Smuggling Operation," complaints or affidavits in support of the complaint in his indictment, wiretap information concerning plaintiff, or transcripts of intercepted telephone calls from the Skyway Motel during the time frame requested.  *Id.*  Finally, the KCFO explained that 90-00010-01/16-CR-W-6 was not a recognized FBI number and that Plaintiff should redirect that request to an appropriate United States Attorneys office.  *Id.*  Plaintiff did not administratively appeal KCFO's response.[5]  *Id.*

Finally, James H. Lesar, attorney for Plaintiff, requested by letter dated October 2, 2002, copies of all prior FOIA/Privacy Act requests made by Plaintiff or on Plaintiff's behalf, and any correspondence related to such requests.  *Id.* ¶ 15.  KCFO returned Mr. Lesar's request because he failed to include a Privacy Waiver and Certification of Identity from Plaintiff.  *Id.* ¶ 16.  Mr. Lesar resubmitted his FOIA request with an enclosed privacy waiver by letter dated December 22, 2002.  *Id.* ¶ 17.  By letter dated January 10, 2003, the KCFO provided Plaintiff's counsel with a duplicate of its release to Plaintiff on January 31, 2000.  Plaintiff and his counsel did not file an administrative appeal.[6]  *Id.* ¶ 18.

---

[5] Despite not having filed an administrative appeal challenging the FBI's response to his second FOIA/Privacy Act request, Plaintiff has taken issue with several aspects of the FBI's response in his Opposition to Defendants' Motion for Summary Judgment.  *See* Pl.'s Resp. Stmt. ¶ 6.  The Court shall address these arguments in the legal discussion below.  *See* Section III.D, *infra*.

[6] Although the Missouri Police Department is named as a Defendant, the Amended Complaint does not contain any ascertainable allegations against that entity.  *See generally*, Am. Compl.

## E.      Procedural Background

Plaintiff initiated this lawsuit on November 22, 2004.  Defendants filed a Motion for a More Definite Statement on January 10, 2005, which the Court granted on July 5, 2005.  *See* Order at 1-2 (July 5, 2005), Docket No. [13].  The Court required Plaintiff to specify certain identifying information concerning his FOIA/Privacy Act requests and encouraged Plaintiff to be as specific as possible in his descriptions of the same.  *Id.*  Plaintiff filed an Amended Complaint on July 26, 2005.  Defendants thereafter filed a Motion to Dismiss and for Partial Summary Judgment.[7]  Plaintiff filed an Opposition and Defendants filed a Reply.  Plaintiff also filed a Sur-reply, styled as a Traverse, and a supplemental memorandum.  While the Court would normally strike these pleadings as improperly filed without leave of Court, the Court has reviewed them and determined that they do not affect the disposition of the case.  The Court shall therefore allow them to remain filed on the docket.

The Court notes that Plaintiff also filed numerous motions during the pendency of Defendants' Motion, including–by way of example–an Emergency Motion for Order directing the government to release all requested records (Sept. 6, 2005), Docket No. [20], Motion for Order to stop conspiracy by defendants (Jan. 5, 2006), Docket No. [29], and Motion to Suppress Electronic Surveillance (Feb. 21, 2006), Docket No. [37].  The Court has denied these and similar motions brought by Plaintiff as either premature (*i.e.*, they related to the merits of the parties' FOIA/Privacy Act arguments that were yet to be determined) or unrelated to the FOIA action brought by Plaintiff (and that were presumably addressed and ruled upon in the criminal

---

[7] Defendants also submitted an Errata to correct a footnote and to submit an additional exhibit.

case related to Plaintiff in another jurisdiction).  Accordingly, Defendant's Motion to Dismiss

and for Partial Summary Judgment is the sole remaining Motion pending before the Court, and it

is ripe for decision.

## II.  LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, and affidavits

demonstrate that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638

(D.C. Cir. 1994).  Under the summary judgment standard, Defendants, as the moving parties,

bear the "initial responsibility of informing the district court of the basis for [its] motion, and

identifying those portions of the pleadings . . . together with the affidavits which [it] believe[s]

demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  Plaintiff, in response to Defendant's motion, must "go beyond the pleadings

and . . . designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324

(internal quotation marks omitted).  Although a court should draw all inferences from the

supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by

itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  To be material, the factual assertion must be capable of affecting the

substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient

admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.

*Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at

251.  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment

may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

In reviewing a motion for summary judgment under the FOIA, the Court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). In the FOIA context, "*de novo* review requires the court to 'ascertain whether the agency has sustained its burden of demonstrating that the documents requested are not "agency records" or are exempt from disclosure under the FOIA.'" *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)). Under the FOIA, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, summary judgment is only appropriate where an agency proves that it has fully discharged its FOIA obligations. *Moore v. Aspin*, 916 F. Supp 32, 35 (D.D.C. 1996) (citing *Weisberg v. DOJ*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).

As an initial matter, an agency seeking summary judgment must show that it "has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994) (internal quotation marks and citation omitted). The relevant question is "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc., v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). The agency affidavits offered to establish the adequacy of a search "must be . . . 'relatively detailed and non-conclusory, and . . . submitted in good faith.'" *Id.* at 1200 (quoting *Grounds Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (citations and quotation marks omitted)).

Congress enacted the FOIA for the purpose of introducing transparency to government activities. *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984). Congress remained sensitive, however, to the need to achieve balance between this objective and the

vulnerability of "legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992); *see also Summers*, 140 F.3d at 1079. Accordingly, the FOIA provides nine exemptions pursuant to which an agency may withhold requested information, *see* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9), and an agency must demonstrate the validity of any exemption that it asserts, *see id.*; *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) ("[c]onsistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents").

To satisfy this burden, the agency may provide a plaintiff "with a *Vaughn* index, which must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance." *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002); *see also Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973). In addition, summary judgment may be granted on the basis of the agency's accompanying affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search. *See SafeCard Servs.*, 926 F.2d at 1200. Courts must "accord substantial weight" to an agency's affidavits regarding FOIA exemptions. 5 U.S.C. § 552(a)(4)(B) (2004); *see also Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) ("Affidavits submitted by an agency are 'accorded a presumption of good faith.'") (quoting

12

*SafeCard Servs., Inc.*, 926 F.2d at 1200).

Finally, in seeking summary judgment, the agency must detail what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document. *Mead Data Cent. Inc. v. Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Any non-exempt information that is reasonably segregable from the requested records must be disclosed. *Stolt-Nielsen Transp. Group, Ltd. v. United States*, 534 F.3d 728, 731 (D.C. Cir. 2008). As "the focus of FOIA is information, not documents, [] an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Id.* at 733-34 (quoting *Mead Data*, 566 F.2d at 260). Further, "before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Id.* at 734 (quoting *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). District courts are required to consider segregability issues *sua sponte* even when the parties have not specifically raised such claims. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In opposing a motion for summary judgment or cross-moving for summary judgment, a FOIA plaintiff must offer more than conclusory statements. *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham v. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)). Indeed, a plaintiff pursuing an action under the FOIA must establish that either: (1) the *Vaughn* index does not establish that the documents were properly withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all nonexempt material in the requested documents. *See Perry-Torres v. State Dep't*, 404 F. Supp. 2d 140, 142 (D.D.C. 2005); *Twist v. Ashcroft*, 329 F. Supp. 2d 50, 53

13

(D.D.C. 2004) (citing *Piper & Marbury, LLP v. U.S. Postal Serv.*, Civ. No. 99-2383, 2001 WL

214217, at *2 (D.D.C. Mar. 6, 2001)).

## III.  DISCUSSION

As a preliminary matter, the Court notes that Plaintiff seeks through various arguments to

turn this proceeding into a collateral attack on issues raised and/or decided in connection with his

criminal conviction.  Pl.'s Mot. at 8-9.  Plaintiff urges this Court not to view this case as relating

to the FOIA or Privacy Act, but rather to view it as an inquiry into whether he was improperly

denied access to documents pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) (and other cases)

during his criminal trial.  Pl.'s Opp'n at 8-9; Am. Compl. at 10-13.  The Court rejects Plaintiff's

invitation to expand the scope of this case because this Court is not a court of general review.  It

possesses jurisdiction pursuant to the causes of action Plaintiff has asserted in this case (*i.e.*, the

FOIA and Privacy Act), but does not have jurisdiction to launch into a free-wheeling inquiry into

Plaintiff's criminal conviction.  Accordingly, the Court shall not have the parties litigate, in this

proceeding, whether Plaintiff was entitled to receive the documents at issue during his two-

decade old criminal proceeding or a related inquiry into whether the Government "perpetrated a

fraud" against Defendant by withholding this information during his criminal trial.  Rather,

Plaintiff must show that Defendants have failed to fully discharge their obligations under the

FOIA and Privacy Act, which cannot be shown by merely referring to Plaintiff's belief that he

was – and therefore is – entitled to certain documents, or that Defendants are simply perpetrating

a large-scale fraud against him.

Having set forth the scope of the Court's inquiry, the Court shall address Plaintiff's

claims as to each of the following five Defendants: (1) the Missouri Police Department, (2) the

Federal Bureau of Prisons, (3) the Drug Enforcement Agency, (4) the Executive Office of United

States Attorneys, and (5) the Federal Bureau of Investigations.

    A.    *Missouri Police Department*

    Having reviewed Plaintiff's Amended Complaint and pleadings, the Court cannot

ascertain any claims against the Missouri Police Department.  Even if such claims existed,

however, the Court would dismiss them because the Missouri Police Department is not a federal

agency.  *See* 5 U.S.C. § 552(f) (defining "agency" to include any "executive department, military

department, Government corporation, Government controlled corporation, or other establishment

in the executive branch of the Government . . . or any independent regulatory agency"); 5 U.S.C.

§ 552a(a)(1) (same).  Neither FOIA nor the Privacy Act provides a private right of action against

state or local government entities.  *See* 5 U.S.C. § 552(a)(4)(B) (describing private right of action

against federal agencies); 5 U.S.C. § 552a(g)(1) (same).  Defendants raised this argument in their

Motion for Summary Judgment, *see* Defs.' Mot. at 1 n.1, and Plaintiff did not respond to it.

Accordingly, to the extent Plaintiff may have intended to assert any claims against the Missouri

Police Department in his Amended Complaint pursuant to the FOIA or Privacy Act, Defendants'

Motion to Dismiss and for Partial Summary Judgment is granted as to those claims.

    B.    *Federal Bureau of Prisons* ("BOP")

    Plaintiff's Amended Complaint alleges that he submitted requests under the FOIA to the

BOP prisons located in Lompoc, California; Tucson, Arizona; and Phoenix, Arizona, on or about

January 15, 2002.  Am. Compl. ¶ 9.  Defendants deny having received these requests.  As

support, Defendants submit a declaration by Ron Hill, the Administrator for the BOP, Freedom

of Information Act/Privacy Act Section, in the Bureau's Office of General Counsel.  *See* Defs.'

15

Mot., Ex. 7 ¶ 1 (Decl. of R. Hill).  Mr. Hill explains that Department of Justice Regulations

require that FOIA requests are to be sent to the central office of the Bureau of Prisons, United

States Department of Justice, in Washington D.C.  *Id.*; 28 C.F.R. § 16.3(a).  Such requests are

logged into a database once received.  *Id.* ¶ 3.  Mr. Hill indicates that "the Central Office's

database does not reflect any record of a request from plaintiff on or about January 15, 2002."  *Id.*

¶ 3.  Mr. Hill also contacted staff members at each of the three Bureau locations where Plaintiff

indicated that he mailed requests because "[w]hen requesters incorrectly attempt to file FOIA/PA

requests by sending them directly to a Bureau correctional institution, staff members are then

assigned to advise requesters of the proper address to send their requests."  *Id.* ¶ 4.  Mr. Hill

asked "[t]he staff members who would typically be assigned to receive such a FOIA/PA request

. . . to search their records for any requests from plaintiff.  These searches resulted in no record of

[Plaintiff's] request[s]."  *Id.*

It is axiomatic that an agency has no obligation to respond to a request that it did not

receive.  *See Hutchins v. Dep't of Justic*e, No. 00-2349, 2005 U.S. Dist. LEXIS 11355 at *6

(D.D.C. Jun. 6, 2005) ("[w]ithout any showing that the agency received the request, the agency

has no obligation to respond to it").  In the present case, Plaintiff claims that he sent the requests,

*see* Pl.'s Opp'n at 10, but has provided no evidence to support that claim beyond his bare

assertion of the same.  In the absence of such evidence, Mr. Hill's declaration indicating that

Plaintiff's alleged requests were never received is entitled to a presumption of good faith.  *See*

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("[a]gency affidavits are

accorded a presumption of good faith").  Accordingly, the Court shall grant Defendants' Motion

to Dismiss and for Partial Summary Judgment as to Plaintiff's claims against the BOP.

C.      *Drug Enforcement Administration* ("DEA")

Plaintiff's claims against the DEA are based on his allegation that he never received the records released by the DEA in response to his FOIA/Privacy Act requests in 1992.  *See* Pl.'s Opp'n. at 10.  These claims fail for two reasons.  First, Plaintiff has already brought suit in this Court for documents related to these 1992 requests.  *See Willis v. FBI*, No. 96-1455 (D.D.C. Jun. 6, 2000).  Plaintiff's claims were dismissed *with* prejudice, *id.*, Docket No. [125], and the D.C. Circuit affirmed the Court's dismissal.  *See Willis v. FBI*, 274 F.3d 531 (D.C. Cir. 2001).  The doctrine of *res judicata* bars re-litigation of issues that were, as here, decided in a previous action.  *See Allen v. McCurry*, 449 U.S. 90, 94 (1980).  Second, these claims are also barred based by the applicable statute of limitations.  The D.C. Circuit has held that a six-year statute of limitations applies to FOIA actions.  *See Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 56 (D.C. Cir. 1987).  Because Plaintiff filed his FOIA/Privacy Act requests in 1992, and the present action was filed in 2005, Plaintiff's claims have been time-barred for more than 7 years.[8]

Simply ignoring the bar to his claims based on *res judicata*, Plaintiff argues that his claims are timely because the statute of limitations should be tolled.  Pl.'s Opp'n at 9.  Application of the tolling doctrine is inappropriate in this case, however, because Plaintiff had sufficient knowledge to bring a 1996 action against the DEA.  *Cf. Rempfer v. U.S. Dep't of Air Force Bd. for Corrections*, 538 F. Supp. 2d 200, 207 (D.D.C. 2008) (explaining that equitable tolling is only appropriate where, despite the exercise of due diligence, the plaintiff is unable to

---

[8] The Court notes that, despite Plaintiff's argument that he never received these documents, the DEA explains that they were sent "registered mail/return receipt requested," assigned Article # R537576686, were received on December 27, 1993, and were signed for by an "L. Kerr."  *See* Def.'s Mot., Ex. 5, Ex. G  (5/2/94 Letter from R. Rogers to J. Mitchell).

obtain vital information bearing on the existence of his claim) (citing *Smith-Haynie v. Dist. of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998)).  Accordingly, the Court shall grant Defendants' Motion to Dismiss and for Partial Summary Judgment as to Plaintiff's claims against the DEA.

D.   *Executive Office for United States Attorneys* ("EOUSA")

Plaintiff's Amended Complaint and pleadings focus on his FOIA/Privacy Act requests to the EOUSA that the Court shall analytically divide into three categories: (1) Plaintiff's 1999 requests; (2) Plaintiff's 2002 requests that EOUSA did not receive; and (3) Plaintiff's 2001 and 2003 requests that the EOUSA did receive.

1.   1999 Requests

Plaintiff's Amended Complaint did not raise any claims related to his four FOIA/Privacy Act requests sent to the EOUSA in 1999.  Plaintiff's Opposition nevertheless argues that the EOUSA's handling of these requests was improper because the EOUSA (1) consolidated his requests for purposes of processing, and (2) improperly redacted or withheld information that Plaintiff should have received during his underlying criminal proceeding almost two decades ago.  Pl.'s Opp'n at 12.  Plaintiff cannot prevail on these claims, however, because he did not administratively appeal the EOUSA's response to his 1999 requests.  *See Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990) ("[c]ourts have consistently confirmed that the FOIA requires exhaustion of this appeal process before an individual may seek relief in the courts").  Because Plaintiff may not bring these claims in the first instance in this Court, Defendants' Motion to Dismiss and for Partial Summary Judgment shall be granted as to these claims.

2.       2002 requests that EOUSA did not receive

Plaintiff's Amended Complaint alleges that Plaintiff sent FOIA/Privacy Act requests on

or about January 15, 2002, to United States Attorneys Offices in the following locations:  Kansas

City, Missouri; Kansas City, Kansas; Los Angeles, Santa Maria, Santa Ana, and San Diego,

California; and Phoenix and Tucson, Arizona.  Am. Compl. ¶ 9.  The EOUSA has no record of

ever having received these requests.  Defs.' Mot. at 8.  As support, Defendants submit a

declaration by Anthony Ciccone, a Senior Attorney Advisor in the Department of Justice

assigned to the EOUSA, Freedom of Information and Privacy Staff.  *See* Defs.' Mot., Ex. 8 ¶ 1

(Decl. of A. Ciccone).  Mr. Ciccone indicates that he searched the EOUSA's central Oracle

database for these FOIA requests but found none of them.  *Id.* n.2.  He further indicated that he

"canvass[ed]" the United States Attorneys offices listed above and confirmed that they received

no such requests from Plaintiff in 2002.  *Id.*  Finally, Mr. Ciccone notes that there is no United

States Attorney Office in Santa Maria, California, despite Plaintiff's allegations that he sent a

request to that office.  *Id.*  Although Plaintiff's Amended Complaint alleges that he sent these

FOIA/Privacy Act requests, Plaintiff has proffered no evidence to support those allegations (nor

could he as to the Santa Maria, California office, as that office apparently does not exist), and has

failed to refute Mr. Ciccone's declaration, which is entitled to a presumption of good faith.  *See*

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("[a]gency affidavits are

accorded a presumption of good faith").  Accordingly, the Court shall grant Defendants' Motion

to Dismiss and for Partial Summary Judgment as to the claims arising from these alleged 2002

requests.

3.    2001 and 2003 requests that the EOUSA did receive

As described above, on May 11, 2000, the EOUSA responded to Plaintiff's FOIA/Privacy

Act request by processing and releasing nonpublic records to Plaintiff and advising that there

were 650 pages of publicly-filed court records that could "be obtained from the clerk of the court

or [the EOUSA], upon specific request, subject to a copying fee." *Id.*  Plaintiff did not request

the 650 pages of publicly-filed court records at that time, and Plaintiff did not administratively

appeal the EOUSA's FOIA/Privacy Act response. *Id.*  After Plaintiff submitted another

FOIA/Privacy Act request, the EOUSA sent a letter to Plaintiff dated November 16, 2001,

advising that all nonpublic records pertaining to Plaintiff had been released, but reminding

Plaintiff that 650 pages of publicly-filed Court records were available but never requested.

Defs.' Stmt. ¶ 24.  By letter dated December 7, 2001, Plaintiff requested that the EOUSA send

him the 650 pages of publicly-filed court records described in previous correspondence. *Id.* ¶ 25.

The EOUSA then initiated a search for these records, but they could not be located. *Id.* ¶ 26.

Plaintiff's Opposition argues that the Government improperly lost these 650 pages of records.

*See* Pl.'s Opp'n at 13.

Because an agency cannot be expected to release records it cannot locate, the Court shall

construe this argument as one directed to the adequacy of Defendants' search.  In determining the

adequacy of a FOIA search, the Court is guided by principles of reasonableness. *Ogelsby v.*

*Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  To obtain summary judgment on the issue of the

adequacy of the records search, an agency must show "viewing the facts in the light most

favorable to the requester, that . . . [it] has conducted a 'search reasonably calculated to uncover

relevant documents.'" *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)

20

(quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  To meet its burden, the

agency may submit affidavits or declarations that explain both in reasonable detail and in a non-

conclusory fashion the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121,

126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are

sufficient to demonstrate an agency's compliance with the FOIA.  *Id.* at 127.  An agency must

show that it made a "good faith effort to conduct a search for the requested records, using

methods which can be reasonably expected to produce the information requested."  *Ogelsby*, 920

F.2d at 68; *see also Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998).  An agency's search

need not be exhaustive, merely reasonable.  *See W. Ctr. for Journalism v. Internal Revenue Serv.*,

116 F. Supp. 2d 1, 8 (D.D.C. 2000) (citing *Shaw v. State Dep't*, 559 F. Supp. 1053, 1057 (D.D.C.

1983)).

Here, Mr. Ciccone's Declaration serves to establish the reasonableness and adequacy of

the EOUSA's search in response to Plaintiff's FOIA/PA request.  At the request of the EOUSA,

the USA-MOW performed an automated search of its Prosecutors Management Information

System ("PROMIS") and Legal Information Office Network System ("LIONS"), reviewed the

indices of the Federal Records Center, and sent a "global email" dated February 22, 2002, to all

staff "requesting a district-wide search for the files."  Defs.' Mot., Ex. 8 ¶ 30 (Decl. of A.

Ciccone).  After receiving notice of Plaintiff's administrative appeal, EOUSA again advised the

USA-MOW to conduct another search for the missing records.  The USA-MOW then undertook

another search for these records, as reflected in multiple memoranda that were drafted reflecting

the same.  *See Id.*, Ex. 16 (Memoranda dated 11/5/2002; 11/8/2002; 11/19/2002; and

11/20/2002).  Mr. Ciccone's declaration and these search memoranda demonstrate that the

EOUSA undertook an extensive search to find these records, but was unable to locate them.[9]

Based on Mr. Ciccone's declaration and the memoranda included as attachments to Defendants' Motion, the Court finds that Defendants' search was adequate and reasonable. Defendants have set forth, in non-conclusory fashion, two extensive searches that were unquestionably calculated to uncover the requested records, and that reflect the EOUSA's good faith efforts to locate the records. Because the Court finds that the searches were reasonable, and because Plaintiff offers no evidence to the contrary (nor even addresses the applicable legal standards governing such searches), the Court shall grant Defendants' Motion to Dismiss and for Partial Summary Judgment as to these records.[10]

One final issue remains. The EOUSA advised Plaintiff following its search for the 650 pages of publicly-filed Court records that all non-public records in the EOUSA's possession had been released and that it would consider any future requests from Plaintiff for the public records to be duplicative. By letter dated May 14, 2003, Plaintiff submitted another FOIA/Privacy Act to the EOUSA that again requested those documents. Defs.' Mot., Ex. 8 ¶ 29 (Decl. of A. Ciccone). The EOUSA treated this request as a duplicate and did not respond. Neither Plaintiff's Amended Complaint nor his pleadings challenge the EOUSA's action with respect to this request or argue that Plaintiff's request was not, in fact, a duplicate. Nevertheless, even if Plaintiff had asserted such a claim, because Plaintiff requested all documents related to

---

[9] The thoroughness of the search is also reflected in the fact that the EOUSA also uncovered 20 pages of financial records that were previously undiscovered. Those records were subsequently released in full to Plaintiff.

[10] The Court notes that the EOUSA notified Plaintiff that these records were publicly-available Court filings that he could seek to obtain them directly from the Clerk of the Court. *See* Defs.' Mot., Ex. 8 ¶ 34 (Decl. of A. Ciccone).

himself–the subject of his previous six FOIA/Privacy Act requests–Plaintiff would not have

received any additional documents even if the EOUSA had sent him a response. For all of these

reasons, the Court shall grant Defendants' Motion to Dismiss and for Partial Summary Judgment

as to Plaintiff's claims against the EOUSA.[11]

  E.     *Federal Bureau of Investigation* ("FBI")

      1.    Adequacy of Search

As discussed above, the adequacy of a FOIA search is guided by principles of

reasonableness. *Ogelsby v. Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency must show,

"viewing the facts in the light most favorable to the requester, that . . . [it] has conducted a

'search reasonably calculated to uncover relevant documents.'" *Steinberg*, 23 F.3d at 551

(quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). An agency must show that it

made a "good faith effort to conduct a search for the requested records, using methods which can

be reasonably expected to produce the information requested." *Ogelsby*, 920 F.2d at 68.

In the present case, Defendants submit the declaration of David Hardy, the Section Chief

of the Record/Information Dissemination Section, Records Management Division, at FBI

headquarters in Washington, D.C. *See* Defs.' Mot., Ex. 11 ¶ 1 (Decl. of D. Hardy). Mr. Hardy's

declaration serves to establish the reasonableness and adequacy of the FBI's search in response to

Plaintiff's FOIA/PA requests. In particular, Mr. Hardy explains that the FBI uses a system called

Central Records System ("CRS") that manages all information that the FBI acquires in the course

---

[11] Defendants' Motion argues that Plaintiff failed to exhaust his administrative remedies as to his May 14, 2003 request because he directed it to the USA-MOW instead of the EOUSA. *See* Defs.' Mot. at 16-17. Although it does not affect the disposition of the claims in this case, the Court notes that this argument is unpersuasive because the USA-MOW forwarded Plaintiff's other requests to the EOUSA, and the EOUSA responded accordingly.

of fulfilling its law enforcement responsibilities. *Id.* ¶ 21.  The FBI also uses Electronic

Surveillance Indices ("ELSUR"), which maintains information on subjects whose electronic

and/or voice communications have been intercepted as a result of electronic surveillance. *Id.* ¶

26.

 In response to Plaintiff's March 15, 1999 and October 29, 2001 requests, FBI personnel

conducted a search of the KCFO CRS and ELSUR indices. *Id.* ¶ 31.  The search located one

multi-subject, multi-volume file, in which twenty-four pages in that file were responsive to

Plaintiff's requests.  The 24 pages were processed, and 20 redacted pages were released to

Plaintiff on January 31, 2000. *Id.*  The FBI subsequently released two of the four pages that were

withheld in full after reexamining them in relation to this lawsuit. *Id.* ¶ 32 & n.6.

 Plaintiff's Opposition argues that the FBI's search was insufficient because Plaintiff

"finds it hard to believe out of 881 pages generated in an investigation in which he was a target

only 24 pages pertain to him." Pl.'s Opp'n at 11.  The FBI explained, however, that the twenty-

four pages of records were found in a multi-subject, multi-volume investigative file, and that 857

pages of records in that file pertain to multiple third-party subjects, not Plaintiff. *See* Defs.'

Reply at 7.  Plaintiff offers no argument that discredits this explanation.  Mere speculation about

the existence of other documents is insufficient to overcome the presumption of good faith

accorded a FOIA affidavit. *See Flowers v. IRS*, 307 F. Supp. 2d 60, 67 (D.D.C. 2004)

(explaining that "'purely speculative claims about the existence and discoverability of other

documents'" is insufficient to rebut the presumption of good faith) (quoting *SafeCard*, 926 F.2d

at 1200).

 Plaintiff also suggests that the FBI's search for records was inadequate because the file

labeled 166B-2367 was improperly destroyed.  Pl.'s Opp'n at 11.  Mr. Hardy explains in his

declaration that this file was destroyed on November 23, 1977 (*i.e.*, over a decade prior to

Defendant's criminal proceedings) in accordance with 36 C.F.R. 1228.30 (disposition of federal

records).  Plaintiff does not explain why it was inappropriate for the FBI to destroy this file

pursuant to a records managements schedule, and he provides no basis for a finding of bad faith –

particularly in light of the file's destruction date.

Plaintiff's final argument concerning the adequacy of the FBI's search concerns

Plaintiff's belief that he was the target of a wiretap and that corresponding recordings should be

in the possession of the FBI.  *See* Pl.'s Opp'n at 3-9, 11-12.  As an initial matter, this argument

has been raised by Plaintiff in numerous other proceedings, including his criminal trial.  *See* Pl.'s

Opp'n, Ex. 11 at 1-3 (*United States v. Willis*, No. 90-10-12-CR-W-6, Order (W.D. Mo. Aug. 25,

1998) (explaining that Plaintiff's request for all wiretap evidence against him was addressed in

Plaintiff's criminal case and in at least two previous FOIA cases).  As explained above, issues

that were subject to decision in previous cases are barred from re-litigation by the doctrine of *res

judicata*.  *See Allen v. McCurry*, 449 U.S. 90, 94 (1980).  Nevertheless, even if Plaintiff could

assert his claims concerning alleged FBI wiretap information, such claims would fail on the

merits.  Plaintiff cites to a document that the FBI released, in part, in response to a FOIA/Privacy

Act request, which Plaintiff characterizes as evidence that he was the target of a wiretap.  *See*

Pl.'s Opp'n at 7-8 (citing Defs.' Mot., Ex. 11, Ex. Q at 9).  As the FBI correctly explains,

Plaintiff's characterization of this document is unfounded because the document indicates that

*someone* was a "targeted interceptee," but does not indicate one way or the other whether it was

Plaintiff or a third-party whose name was redacted.  *See* Defs.' Reply at 6.  Although Plaintiff

25

filed a Sur-reply and supplemental memorandum that attached additional documents in support

of his argument, even assuming his characterization of these documents is correct (*i.e.*, that a

wiretap was authorized against him), *see* Pl.'s Suppl. Mem. at 1 & Ex. 3 (Appx. with List of

Names), there is nothing to suggest that Plaintiff was, in fact, the target on any intercepted

conversations, or that such wiretap information, if it even existed, has been retained for almost

two decades.

Accordingly, despite Plaintiff's disbelief concerning the volume of records released to

him, his consternation concerning a file destroyed in 1977, and his unsupported belief that there

are wiretap records possessed by the FBI, the Court finds that the Mr. Hardy's declaration

establishes the adequacy of the FBI's search for records.

### 2. Exemptions Claimed

Plaintiff argues, without support or further elaboration, that "[t]he exemptions under the

FOIA/PA are irrelevant." Pl.'s Opp'n at 11. As discussed above, summary judgment may be

granted on the basis of an agency's accompanying declarations if they describe "the justifications

for nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary evidence

in the record nor evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724,

738 (D.C. Cir. 1981). Despite Plaintiff's failure to provide any contrary evidence in the record or

evidence of agency bad faith in connection with the FBI's claimed exemptions, the Court

nevertheless reviews them to determine whether they contain reasonably specific descriptions

that demonstrate the proper application of the claimed exemptions.

i. FOIA Exemption 2

The FBI invoked Exemption 2 to protect from disclosure one permanent source symbol number that was assigned to a confidential source who reports to the FBI on a regular basis. *See* Defs.' Mot., Ex. 11 ¶ 41-42 (Decl. of D. Hardy). Exemption 2 protects information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The D.C. Circuit has held that Exemption 2 applies to material that is "used for predominantly internal purposes," and that this constitutes a "threshold test" for the Exemption's application. *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (quoting *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073 (D.C. Cir. 1981)). Once this test is met, "an agency may withhold the material 'by proving that either [1] disclosure may risk circumvention of agency regulation, or [2] the material relates to trivial administrative matters of no genuine public interest.'" *Id.* (quoting *Schwaner v. Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990) (citations omitted). In the instant case, the FBI asserts that the material is of the former variety known as "high 2" material. *See Schiller*, 964 F.2d at 1207 (describing "high 2" and "low 2" material).

Mr. Hardy states that release of this symbol number would "indicate both the scope and location of FBI informant coverage within a particular geographic area." *See* Defs.' Mot., Ex. 11 ¶ 42. According to Mr. Hardy, such information might also reveal connections to "dates, times, places, events and names from which the source's identity could be deduced." *Id.* For this reason, Mr. Hardy indicates that protection of this identifier is "essential to maintaining the integrity of the FBI's confidential source program." *Id.* Because Mr. Hardy has submitted an unrebutted declaration demonstrating that disclosure of this symbol number could compromise the FBI's use of informants, specifically including their identities and locations, the Court finds

27

that the elements for the application of Exemption 2 are satisfied.

### ii. FOIA Exemption 3

The FBI invoked Exemption 3 to protect federal grand jury materials. Exemption 3 allows an agency to withhold information "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Unlike other FOIA exemptions, Exemption 3 "depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Goland v. Central Intelligence Agency*, 607 F.2d 339, 350 (D.C. Cir. 1978). In this case, the FBI invoked Exemption 3 in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure, which states, in relevant part:

> . . . the following persons must not disclose a matter occurring before the grand jury: a grand juror, an interpreter; a court reporter; an operator of a recording device; a person who transcribes recorded testimony; an attorney for the government; or a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii).

Fed. R. Crim. P. 6(e)(2). The D.C. Circuit has held that Rule 6(e) qualifies as an Exemption 3 withholding statute, even though the Criminal Rules are ordinarily not labeled as such. *See Senate of P.R. v. United States Dep't of Justice*, 823 F.2d 574, 582 & n.23 (D.C. Cir. 1987) ("although rules of procedure promulgated by the Supreme Court generally do not qualify as 'statutes' for exemption (b)(3) purposes[,] [Rule 6(e)] does so qualify because it was specifically adopted by an Act of Congress.") (internal citation omitted). *See also Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867 (D.C. Cir. 1981) (holding that Rule

28

6(e) qualifies as a statute for purposes of Exemption 3).

In this case, the FBI relied on Exemption 3 to protect information that would, according to Mr. Hardy, disclose matters occurring before a Federal Grand Jury convened in the Western District of Missouri. *See* Defs.' Mot., Ex. 11 ¶ 44 (Decl. of D. Hardy). Because Mr. Hardy has submitted an unrebutted declaration demonstrating that disclosure of this information would violate the secrecy of the grand jury proceedings, the Court finds that the elements for application of Exemption 3 are satisfied.

### iii.    Exemption 7(C)

Pursuant to FOIA Exemption 7(C), an agency may withhold information within documents "compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). As the D.C. Circuit has explained, where an agency "specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998) (citing *Pratt v. Webster*, 673 F.2d 408, 419 (D.C. Cir. 1982)). The agency's declarations "must establish a rational 'nexus between the investigation and one of the agency's law enforcement duties,' and a connection between an 'individual or incident and possible security risk or violation of federal law.'" *Id.* (quoting *Pratt*, 673 F.2d at 420-21). Moreover, if the agency's declarations "'fail to supply facts' in sufficient detail to apply the *Pratt* rational nexus test, then a court may not grant summary judgment for the agency." *Id.* (citing *Quinon v. FBI*, 86 F.3d 1222, 1229 (D.C. Cir. 1996)). In the present case, Mr. Hardy explains that the subject documents were created in response to criminal investigations involving "Interstate Transportation in Aid of Racketeering, Interstate Transportation of Stolen Property; Drugs; and

Racketeering Influence and Corrupt Organizations." Defs.' Mot., Ex. 11 ¶ 54 (Decl. of D.

Hardy). The Court finds that Mr. Hardy's unrebutted statements satisfy the threshold inquiry into

whether the documents were compiled for law enforcement purposes.

Having concluded that the FBI has met the threshold tests for FOIA Exemption 7(C), the

Court continues to consider the privacy interest versus public interest balancing required by the

Exemption. *See Dept' of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749,

762 (1989); *SafeCard Svcs. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991). For purposes of

FOIA Exemption 7(C), the D.C. Circuit applies a "categorical rule permitting an agency to

withhold information identifying private citizens mentioned in law enforcement records, unless

disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is

engaged in illegal activity.'" *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting

*SafeCard*, 926 F.2d at 1206). The FBI invoked Exemption 7(C) to protect the names of persons

who were not employed by law enforcement agencies. Defs.' Mot., Ex. 11 ¶¶ 52-62 (Decl. of D.

Hardy). Plaintiff has not overcome this burden (nor even addressed the FBI's arguments), and

the Court therefore finds that the FBI has properly invoked 7(C) to protect this information.

The FBI also invoked 7(C) to protect the identities of federal and local law enforcement

personnel. Generally speaking, "persons involved in FBI investigations–even if they are not the

subject of the investigation– 'have a substantial interest in seeing that their participation remains

secret.'" *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting *King v. DOJ*, 830 F.2d

210, 233 (D.C. Cir. 1987)). Such is certainly the case here, as Mr. Hardy has explained in

substantial detail the potential dangers associated with disclosure of law enforcement names. *See*

Defs.' Mot., Ex. 11 ¶¶ 57, 61 (Decl. of D. Hardy). The Court recognizes that the D.C. Circuit

has held "that the privacy interest in nondisclosure of identifying information may be diminished where the individual is deceased," and has explained that "[t]he fact of death, therefore, while not requiring the release of information, is a relevant factor to be taken into account in the balancing decision whether to release information," *Schrecker*, 349 F.3d at 661 (quoting *SafeCard*, 926 F.2d at 1206)) (quotation omitted).  In this case, however, Plaintiff has asserted *no* public interest for the Court to consider in the balancing of privacy interests and public interests.  *See generally* Pl.'s Opp'n.  Quite simply, Plaintiff proffers no reason why disclosure of this information would "shed[] light on an agency's performance of its statutory duties," *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993), and it is well established that an individual's personal interest in challenging his criminal conviction is not a public interest under FOIA because it "reveals little or nothing about an agency's own conduct."  *Reporters Comm.*, 489 U.S. at 773.  Where there is *no* asserted public interest, even the slightest privacy interest will prevent disclosure under Exemption 7(C).  *See Beck*, 997 F.2d at 1494 (the court "need not linger over the balance; something . . . outweighs nothing every time") (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).

iv.    FOIA Exemption 7(D)

The FBI invoked Exemption 7(D) to protect information furnished by a local law enforcement agency under an implied assurance of confidentiality, names and identifying data related to third parties under an express assurance of confidentiality.  Exemption 7(D) of the FOIA protects from disclosure those records or information compiled for law enforcement purposes that

could reasonably be expected to disclose the identity of a confidential source,

31

> including a State, local or foreign agency or authority or any private institution
> which furnished information on a confidential basis, and, in the case of a record or
> information complied by a criminal law enforcement authority in the course of a
> criminal investigation . . . information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  To properly invoke Exemption 7(D), an agency must show either that a

source provided the information to the agency under an express assurance of confidentiality or

that the circumstances support an inference of confidentiality.  *U.S. Dep't of Justice v. Landano*,

508 U.S. 165, 179-81 (1993).  An agency demonstrates an "express" assurance when it provides

"probative evidence that the source did in fact receive an express grant of confidentiality."

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998) (quoting *Davin v. U.S. Dep't

of Justice*, 60 F.3d 1043, 1061 (3d Cir. 1995)).  Such evidence may include "notations on the

face of a withheld document."  *Id.*  An "implied" assurance may be inferred from evidence

showing the circumstances surrounding the imparting of the information, including the nature of

the criminal investigation and the confidential source's relationship to the target.  *U.S. Dep't of

Justice v. Landano*, 508 U.S. 165, 171-72 (1993).

Mr. Hardy explains that the information withheld under this Exemption relates to an

individual who received an express assurance of confidentiality and was told that his/her identity

would not be disclosed.  Defs.' Mot., Ex. 11 ¶ 68 (Decl. of D. Hardy). "This is evidenced by the

phrase 'Protect Identity' after the individual's name in the responsive records."  *Id.*  The FBI also

protected information associated with a local law enforcement agency.  Mr. Hardy explains that

the FBI offered an implied assurance of confidentiality because the Intelligence Report supplied

by the local law enforcement agency contained the statement "for law enforcement use only."  *Id.*

¶ 70.  Because Plaintiff does not dispute Mr. Hardy's declaration (or even address the

withholding of this information pursuant to this Exemption), the Court finds that Mr. Hardy's

declaration adequately demonstrates that Exemption 7(D) was properly invoked.

> v.      Privacy Act Exemption (j)(2)

Section (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records

"maintained by an agency or component thereof which performs as its principal function any

activity pertaining to the enforcement of criminal laws, including police efforts to prevent,

control, or reduce crime or to apprehend criminals . . ." 5 U.S.C. § 552a(j)(2).  Mr. Hardy

explains that the records concerning Plaintiff were complied pursuant to numerous activities

pertaining to the enforcement of criminal laws, and were therefore exempt from disclosure.  *See*

28 C.F.R. 16.96 (describing the FBI records systems exempt from disclosure).  Because Plaintiff

does not dispute Mr. Hardy's declaration (or even address the withholding of this information

pursuant to this Exemption), the Court finds that Mr. Hardy's declaration adequately

demonstrates that Exemption (j)(2) was properly invoked.

> 3.      Segregability

Finally, the FBI provided a thorough segregability analysis, including the attachment of

the 22 redacted pages of released records, and an explanation for *each* redaction on the face of

every page.  *See* Defs.' Mot., Ex. 11, Ex. Q (redacted copies of documents).  Mr. Hardy indicates

that "[e]very effort was made to provide plaintiff with all material in the public domain and with

all reasonably segregable portions of releasable material.  To further describe the information

withheld could identify the material sought to be protected." *Id.* ¶ 33.  The FBI also indicates

that the remaining withheld information could not be further segregated.  *Id.* ¶ 34.  The Court has

reviewed the redacted copies of the records to determine the proportion of information in the

33

documents that has been labeled as non-exempt and to determine how it is dispersed throughout the document. *See, e.g.*, *Mead Data Cent. Inc. v. Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). In light of this review, and given Mr. Hardy's uncontested declaration concerning the segregability of the information, the Court finds that the FBI has met its burden to disclose all reasonably segregable information.

Because the Court finds that the FBI performed an adequate search for records, demonstrated the proper application of the FOIA and Privacy Act exemptions that it invoked, and performed a proper segregability analysis, the Court shall grant Defendants' Motion to Dismiss and for Partial Summary Judgment on Plaintiff's claims against the FBI.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT Defendants' [27] Motion to Dismiss and for Partial Summary Judgment.  This case shall be dismissed in its entirety.

Date: October 10, 2008

_/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge
